THE PEOPLE ex rel. Louis C. Huck,

v.

THE GRACELAND CEMETERY COMPANY.

1. TAXATION — *exemption.* The true spirit of our laws requires that all property should bear its just proportion of the burden of taxation, and when an exception is made in favor of a corporation, justice demands that it should show clearly a compliance with the terms and spirit of the act exempting it from taxation before it can be permitted to escape a duty incumbent equally upon every citizen.

2. The charter of a cemetery company provided that all property held and actually used by the corporation for burial purposes, or for the general uses of lot holders, or subservient to burial uses, and which had been platted and recorded as cemetery grounds, should be exempt from taxation. The company had ground in actual use for cemetery purposes, and other lands separated therefrom by a public highway, which was platted and recorded as cemetery lands, but never used as such. The company had erected thereon a stable and some houses, occupied and used by men in the employ of the company, and removed mold and sand therefrom, and used it as needed in improving the ground actually used for cemetery purposes: *Held,* that such use of the property did not render it exempt from taxation under the terms and spirit of the charter.

APPEAL from the County Court of Cook County; the Hon. M. R. M. WALLACE, Judge, presiding.

Mr. JOHN M. ROUNTREE and Mr. JOHN P. WILSON, for the appellant.

Mr. WILLIAM C. REYNOLDS and Messrs. LAWRENCE, CAMPBELL & LAWRENCE, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an application for judgment against certain lands owned by Graceland Cemetery Company, for the taxes of 1875. The company appeared in the county court and objected to the rendition of judgment, on the ground that the property was exempt from taxation under section 5 of its charter, which declares:

"All lots sold for burial purposes by said cemetery company, when conveyed by the corporation to individual pro-

prietors, shall be indivisible, but may be held and owned in undivided shares, and shall be free from taxation and exe-cution and attachment, provided, that no one person shall hold, at any one time, more than four lots so exempted; and all estate, real or personal, held by the company, actu-ally used by the corporation for burial purposes, *or for the general uses of lot holders or subservient to burial uses,* and which shall have been platted and recorded as cemetery grounds, shall likewise be exempt as above."

The county court sustained the objection and denied judgment, and the county collector appealed.

The property which appellee claimed to be exempt from taxation consisted of two large tracts of land, one contain-ing forty-six and sixty-seven one-hundredth acres west of Green Bay road, in the south half of the south-west quar-ter of section 17, and the other contains one hundred and seven acres in the north-west quarter of section 17, lying north of Sulzer street in the town of Lakeview, Cook county. Neither of the tracts is included with the lands owned by the company and in use for burial purposes. No lots have been sold for burial purposes, nor has any portion of either tract ever been actually used for burial purposes, although it was surveyed and platted six or seven years ago. It also appears that these lands are separated from the land in actual use by the company by a public highway. The company have erected on the forty-six-acre tract several buildings occupied by men in its employment, and stables where its horses are kept; the other tract of 107 acres is fenced off by itself, and has been used by the com-pany as a pasture for its horses; and, as occasion required, sand and mold have been taken from each tract and used on the company's land which is in actual use for burial pur-poses, for the purpose of improving the same.

Appellee does not contend that the lands in question are, or ever have been, in actual use for burial purposes, or that they are held "for the general use of lot holders;" but it is said the lands have been platted as cemetery grounds,

22 — 86TH ILL.

and the plat recorded, and they are held "subservient to burial purposes," and, being thus held, they are exempt from taxation under the charter.

It is true that, under the language of the act, lands held " subservient to burial purposes " are exempt from taxation, and the question is, whether these lands can be so regarded. Webster's definition of "subservient" is, useful as an instrument to promote a purpose; serving to promote some end. If appellee had been organized to speculate in real estate in and contiguous to Chicago, or had authority to buy and hold lands for agricultural purposes, then the object of holding these lands would be apparent; but in what manner these two large tracts of land can be regarded as useful to promote the purpose for which appellee was incorporated it is somewhat difficult to perceive. Appellee was organized under a general law, and began business prior to the passage of the special act under which it is now acting. It has been organized under its present charter for sixteen years, and yet not a single lot on these tracts has been sold for burial purposes, nor has a person been buried thereon. The company has ninety or one hundred acres of land now in use for the burial of the dead, and the record fails to disclose when, if ever, these lands will be required for that purpose. Mr. Reynolds, who has been the manager of the cemetery company for a number of years, was asked, on cross-examination, this question: " Is it your intention to extend the burial part of the cemetery west of the Green Bay road at the present time? " He answered: " I think that their future proceedings with regard to the land will be largely influenced by the circumstances as they may arise. They are anxious to extend their cemetery, and propose to do so, and what particular direction they will extend it first — westerly, or northerly, or easterly — they have not definitely decided." From this statement we infer that the company owns lands so contiguous that it can extend the cemetery in almost any direction it may desire; and had there been a remote probability that the extension

was likely to embrace the lands in question, the witness would no doubt have so informed the court.

It may be, and probably is, a profitable investment for this company to hold 153 acres of land free from taxation; but when the company has made no use of the property, except to remove therefrom a quantity of earth and sand, and erected thereon a stable and a few houses to be occupied by the company's horses and men, we can not believe the holding of the property for such a purpose is useful to promote the object for which the Legislature passed appellee's charter, nor do we believe it was ever contemplated by the Legislature to give appellee such a great privilege not shared by the public at large. Appellee has the right, under its charter, to purchase and hold 500 acres of land; it has in actual use about 100 acres, which, by the terms of the charter, is exempted from taxation. Now, is it reasonable to suppose that the Legislature ever contemplated to invest this company with the power to hold the remaining 400 acres of land free from taxation, by the doing of a few trifling acts upon it? The act must receive a reasonable construction — one that will carry out the object and purpose of the charter, and at the same time protect the public from imposition by the mere pretenses of the corporation that its interests require 400 acres of land to be held subservient to a tract of 100 acres in actual use.

The true spirit of our laws requires and demands that all property, both real and personal, should bear its just portion of the burden of taxation, and when an exception is made in favor of a corporation like appellee, justice demands that it should show clearly a compliance with the terms and spirit of the act exempting it from taxation, before it should be allowed to escape a duty incumbent equally upon every citizen.

Here are two large tracts of land not used, or likely for years to come to be used, for cemetery purposes. While we may concede the right of the company to purchase and hold the land to be appropriated some time in the distant future

to burial purposes, yet we can not hold, under a fair or reasonable construction of its charter, that the land can be held free from taxation.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*