MICHAEL KELLER *et al.*, Plaintiff-Appellant, *v.* MICKEY KELLEY, Treasurer of the County of Union, Defendant-Appellee.

Fifth District   No. 81—543

Opinion filed December 2, 1982.

John Womick, of Carbondale, for appellants.

Rodney A. Clutts, State's Attorney, of Jonesboro, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

On July 21, 1980, plaintiffs, Michael Keller and Anna Grain Elevator, Inc., instituted a *mandamus* action to compel defendant, Mickey Kelley, the treasurer of Union County, to issue a certificate pursuant to section 397.1 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch.73, par. 1009.1).

Plaintiffs alleged that they leased from Illinois Central Gulf Railroad real property which was located in Anna, Illinois, at 1000 Sheridan Road. Situated upon this real estate was a structure and other equipment used for grain operations, which plaintiffs alleged was their personal property. Plaintiffs further alleged that their personal property was destroyed by fire on April 22, 1980, and that pursuant to section 397.1 of the Illinois Insurance Code, they requested that defendant issue a certificate that no delinquent taxes were due and owing on the property. The complaint further alleged that defendant refused to do so and, consequently, plaintiffs have been unable to collect the proceeds of their fire insurance. Plaintiffs prayed that the trial court issue a writ of *mandamus* requiring the defendant to execute the certificate required by section 397.1 of the Illinois Insurance Code.

Defendant filed an answer to plaintiffs' complaint for *mandamus* which denied, *inter alia,* that there were no delinquent taxes due and owing. In late April 1981, the case was tried.

Michael Keller, the president of Anna Grain Elevator, Inc., testified in his own behalf. He stated that he leased land from Illinois Central Gulf Railroad at 1000 Sheridan Road in Anna, Illinois, and that he placed certain personal property on the land. He testified that this personal property consisted of grain bins and an office structure which was sitting on concrete blocks. Mr. Keller said that it was the office structure which was damaged by fire. He further stated that the railroad paid the real property taxes on its main line. On cross-examination, Mr. Keller said that he owned the office structure, which he described as being one of the improvements on the real estate. He also said that in the past six years he had been receiving tax notices from defendant which indicated that taxes were due and owing on the

property in question.

Gene Plott, the supervisor of assessments for Union County, was called by plaintiffs as an adverse witness. Mr. Plott testified that for the past six years the railroad land located at 1000 Sheridan Road had certain improvements situated thereon which he assessed as noncarrier real estate. He stated that he did not assess the land itself and indicated that his definition of noncarrier real estate included structures, grain bins and elevators located on the property. Mr. Plott testified that he utilized sections 79(4) and 83 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, pars. 560(4) and 564) to determine how to assess noncarrier real estate.

Defendant was also called by plaintiffs as an adverse witness. Defendant testified that there were no outstanding taxes on the railroad's land located at 1000 Sheridan Road. He said that he refused to issue the certificate that no taxes were due and owing, as plaintiffs had requested, because the noncarrier real estate taxes on the improvements located on the railroad's land had not been paid. He said that improvements are considered real estate under the applicable statutes.

Defendant called Gene Plott to the stand. Mr. Plott stated that he assessed the noncarrier real estate taxes to "Anna Elevator, care of Mike Keller" and not to the railroad which owned the land at 1000 Sheridan Road. He testified that what constitutes noncarrier real estate is determined by the Department of Revenue, which supplies this information to county officials through documents filed in the county clerk's office. Mr. Plott said that these documents are used for the purpose of assessment and to determine the individuals responsible for paying the noncarrier real estate taxes. Documents which indicated that the Department of Revenue listed plaintiffs' office structure and grain elevators located on the railroad's land as noncarrier real estate from 1974 to 1979 were admitted into evidence. On cross-examination, Mr. Plott reiterated that plaintiffs' noncarrier real estate was not land but rather improvements on the land and that he did not assess the land itself.

Defendant testified on his own behalf. He said that he sent noncarrier real estate tax notices to Mr. Keller and Anna Elevator Company.

After hearing the evidence, the trial court stated that the structure located on the railroad's land was noncarrier real estate, that noncarrier real estate taxes were due and owing, and that plaintiffs were responsible for paying these taxes. On May 5, 1981, the trial court issued an order in which it declared that there were noncarrier

real estate taxes due and owing and, therefore, plaintiffs' request for a writ of *mandamus* would be denied. The issue before us is whether this ruling by the trial court was correct.

Plaintiffs argue that under sections 79(4) and 83 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, pars. 560(4) and 564), defendant should have assessed the noncarrier real estate tax to the Illinois Central Gulf Railroad and that since the real estate taxes which were billed to the railroad have been paid, there were no taxes due and owing which would preclude defendant from issuing the certificate regarding payment of taxes under section 397.1 of the Illinois Insurance Code.

Defendant maintains that plaintiff owes the noncarrier real estate tax and that assuming that it is the railroad's tax burden, there are taxes due and owing and, therefore, defendant should not be required to issue the certificate regarding payment of taxes.

We find that plaintiffs' position has merit. Defendant, having mistakenly taxed plaintiffs for noncarrier real estate instead of the railroad, should not be allowed to deny plaintiffs the benefits of the insurance.

■ While defendant correctly notes that the structure placed on the railroad's land by the plaintiffs falls within the definition of noncarrier real estate (Ill. Rev. Stat. 1979, ch. 120, par. 560(4)), the statute which provides how such property should be taxed plainly indicates that it is the railroad which owes the noncarrier real estate tax. Section 83 of the Revenue Act of 1939 provides:

> "Every railroad company subject to assessment in this State shall annually return to the Department a list of its noncarrier real estate in this State, indicating the description thereof, the current assessed value, and the estimated true value of all non-carrier real estate both within and without this State, and any other information the Department may require. The Department shall examine said list and make whatever additions or alterations it may find necessary, and transmit to the proper assessing officials of each county in which non-carrier real estate may be located, the list above described, together with any other information it may deem pertinent. The proper assessing officials of each county shall thereupon assess such non-carrier real estate in the same manner as other similar property belonging to individuals, except that it shall be treated as property belonging to railroads, under the terms 'land' and 'lots'. If any parcels of land used as non-carrier real estate are not platted, any description shall be sufficient which

would enable a competent surveyor to locate the property." (Ill. Rev. Stat. 1979, ch. 120, par. 564.) The language of the statute thus indicates that it was designed to allow local taxation of railroads. (See *People ex rel. Brenza v. Chicago & North Western Ry. Co.* (1951), 411 Ill. 85, 92, 103 N.E.2d 85, 89; *Chicago Union Station Co. v. Korzen* (1981), 96 Ill. App. 3d 780, 782, 422 N.E.2d 62, 64.) Contrary to defendant's assertion, it is the railroad, not the plaintiff, which owes the noncarrier real estate tax.

In the case at bar, it is undisputed that there are no outstanding taxes on the railroad's real estate. Defendant, nevertheless, argues that since he billed plaintiffs for the noncarrier real estate taxes and plaintiff failed to pay them, there are now taxes due and owing and, therefore, the certificate required under section 397.1 of the Illinois Insurance Code should not be issued. We do not agree. Plaintiffs cannot be expected to pay taxes they do not owe. At oral argument, plaintiffs' counsel said he advised Mr. Keller not to pay the noncarrier real estate taxes because they were, under the statutes, owed by Illinois Central Gulf Railroad. This interpretation of the law was correct. It was defendant's mistaken interpretation of section 83 of the Revenue Act of 1939 which caused the erroneous billing to plaintiffs and resulting nonpayment by the railroad, which owed the noncarrier real estate tax. It would be unjust to require plaintiffs to suffer for defendant's mistake.

■ Defendant alternatively argues that regardless of who owes the taxes, the fact remains that since the noncarrier real estate tax has not been paid, there are taxes due and owing which preclude issuance of the certificate under section 397.1 of the Illinois Insurance Code. This argument is compelling but unavailing. The purpose of section 397.1 of the Illinois Insurance Code is to obtain payment for delinquent property taxes from the proceeds of insurance. (See Ill. Rev. Stat. 1979, ch. 73, pars. 1009.1(d) and (e).) The statute itself states that section 397.1 should not be construed as creating any additional obligation for an insurance company to pay unpaid delinquent taxes. (Ill. Rev. Stat. 1979, ch. 73, par. 1009.1(g)(3).) If, as in the instant case, the insured is not the property owner and does not owe the taxes, then his insurance proceeds cannot be reached by the taxing authority. Thus, the identity of the owner of the noncarrier real estate is not irrelevant as defendant suggests. Defendant, by refusing to issue the certificate regarding payment of taxes, is wrongfully depriving plaintiffs, who owe no taxes on the property, of insurance benefits.

Defendant had a statutory duty to issue the certificate regarding payment of taxes. *Mandamus* is an appropriate means to compel pub-

lic officials to comply with such duties. (*Overend v. Guard* (1981), 98 Ill. App. 3d 441, 443, 424 N.E.2d 731, 733.) The trial court erred by refusing to grant plaintiffs' request for relief.

For the foregoing reasons, the judgment of the circuit court of Union County is reversed and remanded with directions to issue the writ of *mandamus*.

Reversed and remanded with directions.

HARRISON and WELCH, JJ., concur.